**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NABIL SALEH, as Trustee of the Nabil
Saleh M.D. LTD Pension Plan                )
                                           )
                                           )
        Plaintiff,                         )
                                           )        No. 14-CV-09186
        v.                                 )
                                           )        Judge John J. Tharp, Jr.
HASAN MERCHANT, et al.,                    )
                                           )
        Defendants.                        )

---------------------------------------------------------------------------------------------------------

MUSKEGAN HOTELS LLC, M.D. 1            )
LLC, GLOBAL DEVELOPMENT,               )
INC., MD GLOBAL LLC and                )
MICHAEL I. MERCHANT, as                )
Administrator of the Estate of Hasan G. )
Merchant                               )
                                       )
        Cross-Plaintiffs,              )
                                       )
        v.                             )
                                       )
FEDERAL DEPOSIT INSURANCE              )
CORP., as Receiver for The National    )
Republic Bank of Chicago, THE STATE    )
BANK OF TEXAS, CHANDRAKANT             )
PATEL, ADVANCED APPRAISAL              )
GROUP, INC., ADVANCED                  )
APPRAISAL CONSULTANTS, INC.,           )
ADVANCED APPRAISAL                     )
CONSULTANTS, LLC, WILLIAM              )
DADDONO, HIREN PATEL,                  )
EDWARD FITZGERALD, WOLIN &             )
ROSEN LTD. and SMITHAMUNDSEN           )
LLC,                                   )
                                       )
        Cross-Defendants.              )

## MEMORANDUM OPINION AND ORDER

Following dismissal of their Second Amended Cross-Complaint, Michael Merchant, as administrator of the estate of Hasan Merchant, and several of Hasan Merchant's companies have returned with what is now a Fifth Amended Cross-Complaint ("FACC") alleging that a group of cross-defendants conspired to use fraudulent appraisals to induce them to purchase hotel properties at inflated prices. This iteration of the cross-complaint asserts fraud, breach of fiduciary duty, tortious interference with contract, unjust enrichment, Illinois Consumer Fraud Act, and civil conspiracy counts against cross-defendants, as well as several counts invoking the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Most cross-defendants now move again to dismiss the FACC in its entirety. This time, some of the claims survive.

## I.  BACKGROUND[1]

According to the FACC, in 2003, Hiren Patel, then CEO of National Republic Bank of Chicago ("NRB"), hatched a plan with appraiser William Daddono to use inflated real estate appraisals to sell NRB's foreclosed hotel properties. FACC ¶ 12, ECF No. 204. Painted in broad strokes, the plan had several steps: First, NRB would obtain an appraisal from Daddono fraudulently valuing a hotel property owned by NRB at approximately twice its market value.[2] An unsuspecting purchaser would then take out a loan from NRB and use the proceeds to purchase the hotel property at an inflated price, relying on the false appraisal. Inevitably, revenue from the

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

[2] The FACC alleges that Daddono intentionally employed several methodological errors in conducting his appraisals to arrive at heightened values, including: relying on assumptions that underestimated operating expenses and over-estimated income potential of the hotels; using revenue per available room figures for the hotels more than three times greater than the most recent available figures for each hotel; using comparable sales that were too old to be relevant; and comparing hotels that were several degrees nicer than the hotels being evaluated. FACC ¶ 142.

hotel's operations would be insufficient to cover the loan payments. With the purchaser in default, NRB—having collected a sizable down payment (based on the inflated appraisals), repatriated the mortgage loan in its capacity as the buyer, and with any debt service payments the purchaser had been able to make before defaulting as the icing on the cake—would foreclose on the hotel property and retake possession. Rinse, repeat.

## A.    Cross-Plaintiffs' Purchases

Hasan Merchant[3] and his companies, Muskegan Hotels LLC,[4] M.D.1 LLC, Global Development, Inc., and MD Global LLC (together, "cross-plaintiffs"), claim that they were victims of Patel and Daddono's scheme. Cross-plaintiffs purchased three Michigan properties from NRB: hotels located at 3380 and 3450 Hoyt Street in Muskegon, and a hotel at 798 Ferguson Drive in Benton Harbor. FACC ¶ 26. Daddono's appraisals overvalued each of the properties. Daddono valued the 3380 Hoyt property, worth $800,000, at $1.45 million; the 3450 Hoyt property, worth $500,000, at $1.1 million; and the 798 Ferguson property, worth $1.1 million, at $2.34 million. *Id*.

Edward Fitzgerald, President of NRB (and second-in-command to Hiren Patel), was the closing agent for the three purchases. *Id*. ¶ 163. Fitzgerald sent the false appraisals to the cross-plaintiffs, and commissioned settlement statements and closing instructions using the inflated appraisals. *Id*. ¶ 164. Fitzgerald, at Hiren Patel's direction, mailed to the cross-plaintiffs Daddono's appraisal of the 798 Ferguson property on May 1, 2006; the appraisal of the 3380 Hoyt property on February 21, 2007; and the appraisal of the 3450 Hoyt property on March 10, 2007. *Id*. ¶¶ 17-18, 172, 179, 186. For each of the purchases, Fitzgerald directed subordinates to electronically

---

[3] Merchant is deceased; Michael I. Merchant, as administrator of his estate, is a party to this litigation in his stead.

[4] This appears to be the correct spelling of the name of this corporation; its name does not mirror the spelling of the municipality, "Muskegon."

transmit the false appraisals to NRB's loan underwriters.[5] *Id*. ¶¶ 173, 178, 184. Cross-plaintiffs relied on the faulty appraisals procured by Patel and Fitzgerald in deciding to purchase the hotels at price points far above their actual value. *Id*. ¶¶ 175, 177, 180, 183. [6]

Julie Kaminski, an attorney at cross-defendant Wolin & Rosen, Ltd., prepared the loan and closing documents for each of the purchases. *Id*. ¶¶ 50, 51, 52. Kaminski and another firm attorney, Philip S. Wolin, were experienced in real estate transactions and possessed loan files containing hundreds of Daddono's appraisals. Kaminski and Wolin's files also contained dozens of legitimate property appraisals that demonstrated that Daddono's appraisals were fraudulent.[7] *Id*. ¶ 161. Regardless, the closing documents prepared by Kaminski for the cross-plaintiffs' purchases contained principal amounts based on Daddono's false appraisals. *Id*. ¶ 141. On the date of each closing, NRB drew checks to Wolin & Rosen and Advanced Appraisal (one of Daddono's companies). The typical payment to Wolin & Rosen was $2,000; the typical payment to Advanced Appraisal was $3,600. *Id*. ¶ 141.

Ultimately, Merchant and his companies were unable to make debt service payments on the hotel properties and defaulted. In addition to the direct losses on the hotel purchases, Merchant alleges that he lost out on another profitable deal when the investments in the Michigan properties failed. Merchant was party to a separate agreement to purchase land in Punta Cana, Dominican

---

[5] The transmission for the Benton Harbor property occurred on May 15, 2006. The transmission for the Muskegon properties occurred on April 18, 2007. FACC ¶¶ 173, 178, 184.

[6] The closing dates for the Benton Harbor property were December 22, 2005 and June 26, 2007. The closing dates for the Muskegon properties were April 18, 2007 and July 18, 2007. FACC ¶ 141.

[7] This allegation is ambiguous; the complaint does not explain how these files compelled such a conclusion. Granting the cross-plaintiffs every reasonable inference, the Court construes this as an allegation that Wolin and Kaminski had other, legitimate, appraisals for many properties that Daddono had appraised and so were on notice that Daddono's appraisals were inflated.

Republic, that he sought to develop into bungalows and villas. *Id.* ¶ 96. Cross-plaintiffs expected to make a net profit of $28.5 million on that development, but the Punta Cana purchase agreement was cancelled after cross-plaintiffs suffered losses on the Michigan properties. *Id.* ¶¶ 96, 98. Cross-plaintiffs also had a contract with Nabil Saleh, an investor, governing the operation of the three Michigan hotels (the "Muskegon contract"). They contend that Saleh breached the Muskegon contract by filing the instant lawsuit against Merchant and several other entities without authorization of the other investors. *Id.* ¶ 102. Ultimately, cross-plaintiffs allege that they were damaged by the fraudulent scheme to the tune of $15,000,000.[8]

## B. Other Fraudulent Acts

Cross-plaintiffs allege that they were not the first victims of NRB's scheme regarding the 3380 Hoyt property. In 2003, NRB presented Kumbh Enterprises, Inc. and Laxmi of Michigan, LLC with an inflated Daddono appraisal of the Hoyt property. On December 19, 2003, the two companies proceeded to purchase the hotel, using a loan from NRB, for $1.2 million. *Id.* ¶ 251. The property was, at that point, worth $600,000. NRB foreclosed on the property three years later and obtained a Sheriff's Deed. *Id.* ¶ 252. Upon repossessing the hotel, NRB again used a false appraisal to sell it to cross-plaintiffs. When cross-plaintiffs defaulted, NRB again foreclosed and Obtained a Sheriff's Deed for the 3380 Hoyt property. *Id.* ¶ 254. The property was then sold again—once more with an inflated loan—to another purchaser, Bhakti Hospitality, Inc. *Id.* ¶ 255.

---

[8] The FACC also alleges that cross-defendant State Bank of Texas and its owner, cross-defendant Chandrakant Patel, purchased several of NRB's loans after NRB collapsed, knowing that the loans were based on fraudulent appraisals. The FACC, however, identifies no connection between State Bank of Texas and Chandrakant Patel and the cross-plaintiffs. The FACC further alleges that SmithAmundsen performed legal work related to loans based on fraudulent appraisals for NRB and its successors. The FACC similarly fails to connect this conduct to the cross-plaintiffs' claim aside from alleging discovery violations in this litigation.

NRB also allegedly used Daddono's inflated appraisals to sell properties other than those purchased by the cross-plaintiffs. For example, in April 2001, Champakbhai Patel and Delaware Motel Associates, Inc., executed a promissory note in the amount of $1.7 million (the value at which Daddono appraised the property) to NRB to purchase an Ohio hotel, but its actual market value was $867,000. *Id*. ¶ 189. The closing for the property occurred on January 28, 2002, at which point the face value of the promissory note was $1.75 million and the market value of the property was $920,000. *Id*. ¶ 193. When, the purchasers were unable to make loan payments over the next several years, they agreed with NRB to a series of modifications at heightened interest rates. *Id*. ¶¶ 197-215.

Champakbhai Patel and a second company, Independence Management Associates, Inc., fell victim to NRB and Daddono again, the FACC alleges, in July 2004, when they took out a $1.5 million loan from NRB for the purchase of an Independence, Ohio, hotel property in reliance on a false Daddono appraisal. *Id*. ¶ 216. The market value of the property in July 2004 was $800,000. *Id*. ¶ 217. A third Champakbhai Patel company, Turkey Foot Lake Road Holdings, LLC, borrowed $350,000 from NRB to purchase a hotel in Akron, Ohio in October 2008. *Id*. ¶ 219. Daddono valued the property at $400,000, well above its true market value of $250,000. *Id*. ¶ 221. In addition to these purchases, the cross-complaint identifies a multitude of other hotel sale agreements that it posits were infected by Daddono's false appraisals. *Id*. ¶¶ 188-236.[9]

---

[9] The FACC also alleges that Hiren Patel, Fitzgerald, Chandrakant Patel, and the State Bank of Texas submitted false affidavits and gave false testimony in a series of collection actions brought by State Bank of Texas and Capital Crossing Servicing Company LLC (the two purchasers of NRB's loans after NRB collapsed). The FACC fails, however, to identify the substance of any of the purportedly fraudulent statements made in those cases. FACC ¶¶ 236-247.

## C. Procedural History

In 2010, Nabil Saleh, an investor in the hotel properties purchased by cross-plaintiffs, filed suit in the Circuit Court of Cook County, Illinois, against Hasan Merchant and fifteen other defendants, including Muskegan Hotels LLC, M.D. 1 LLC, Global Development LLC, MD Global LLC (*i.e.*, all the cross-plaintiffs) and NRB. Saleh's suit alleges that the defendants conducted a scheme to defraud investors in the hotel properties. *See* Dkt. 1-4. Most of the defendants named by Saleh—including every current cross-plaintiff—in turn filed cross-claims against NRB alleging fraud, tortious interference with contract, unjust enrichment, and quantum meruit counts. *See* Dkt. 1-6. In late 2014, NRB failed and the Federal Deposit Insurance Corporation ("FDIC") took NRB into receivership. The FDIC removed the case to federal court, after which the current cross-plaintiffs filed a new cross-complaint alleging three counts under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, in addition to Illinois state law claims. *See* Dkt. 14. The case was then stayed while cross-plaintiffs pursued their claims through the FDIC's administrative process, which resulted in a denial of all claims. *See* Dkt. 26-27. In May 2017, cross-plaintiffs filed a Second Amended Cross-Complaint ("SACC"), which in large part the Court dismissed without prejudice. *See* ECF Nos. 127, 183. After filing several ineffective amendments, cross-plaintiffs have now filed a Fifth Amended Cross-Complaint, alleging RICO counts as well as fraud, tortious interference with contract, civil conspiracy, unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Practices Act. Each cross-defendant[10]—except

---

[10] Cross-defendants are Hiren Patel and Edward Fitzgerald (former principals of National Republic Bank of Chicago), William Daddono, Advanced Appraisal Group, Inc., Advanced Appraisal Consultants, Inc., Advanced Appraisals Consultants, LLC, State Bank of Texas, Chandrakant Patel (Chairman of State Bank of Texas), Wolin and Rosen Ltd., SmithAmundsen LLC, and the Federal Deposit Insurance Corporation.

Daddono (who is incarcerated) and his Advanced Appraisal entities (which have not appeared in this litigation)—again moves to dismiss the counts against them.

## II. DISCUSSION

### A.    Fraud and Related Counts

The essence of cross-plaintiffs' theory is fraud. The FACC includes three fraud counts against Daddono, the Advanced Appraisal entities, Hiren Patel, Fitzgerald, Wolin & Rosen, and SmithAmundsen: one based on the false appraisals for each of the three Michigan hotels (Count I); one based on closing documents and settlement statements containing principal amounts based on the false appraisals (Count II); and an aiding and abetting count (Count III).

Under Illinois law, the elements of a fraudulent misrepresentation claim are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Cross-plaintiffs' fraud allegations must comply with Federal Rule of Civil Procedure 9(b), which requires parties to "state with particularity the circumstances constituting fraud." "A complaint alleging fraud must provide the who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted). "Malice, intent, and other conditions of a person's mind," by contrast, "may be alleged generally." Fed. R. Civ. P. 9(b). This does not mean that a complaint suffices if it contains only "bare assertions of [the defendants'] state of mind." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). State of mind allegations still require "subsidiary facts," and a complaint "might pass muster if it offers facts that suggest a motive" for the alleged bad faith conduct. *Id. See also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) ("Bare assertions of the state of mind required for the claim . . . must be supported with subsidiary facts.") (citing

*Ashcroft v. Iqbal,* 556 U.S. 662, 680–83 (2009); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers*, LLP, 475 F.3d 824, 833 (7th Cir. 2007) (although "states of mind may be pleaded generally under Rule 9(b), the complaint must still afford a basis for believing that plaintiffs could prove scienter") (internal quotation marks and citations omitted).

### 1.     Hiren Patel and Fitzgerald

Cross-plaintiffs have adequately pled a fraud claim as to Hiren Patel and Fitzgerald. These two cross-defendants attack the FACC for providing insufficient detail, asserting that it "fails to attach the written appraisals, fails to allege the dates of the appraisals, to whom the appraisals were provided and when, and fails to allege facts sufficient to identify any specific statement made by any Cross-Defendant to any Borrower in the written appraisal that was intentionally false." Hiren Patel Motion to Dismiss at 4, ECF No. 210. It is true that no appraisals are attached to the FACC, but there is no requirement to include exhibits with a complaint, *see Ferris Mfg. Corp. v. Carr,* 2015 WL 279355, *5 (N.D. Ill. Jan. 21, 2015, and no need to do so here, where the allegations of the complaint meet the requisite pleading standard: the FACC identifies the author of the appraisals (Daddono); the allegedly false statements made in the appraisals (*i.e.*, the inflated amount the property was appraised for and the actual value of the property), FACC ¶ 26; the mechanisms the appraiser used to arrive at inflated figures, *id*. ¶ 142-143; the identity of the individuals who communicated the appraisals to cross-defendants (Fitzgerald, at Patel's direction), *id*. ¶¶ 17-18, 172, 179, 186; the mechanism through which the appraisals were communicated (U.S. mail), *id*. ¶¶ 172, 179, 186; and the dates on which the appraisals were sent to cross-defendants, *id*. Put differently, the FACC identifies the "who, what, when, where, and how" of the allegedly fraudulent conduct as it pertains to Hiren Patel and Fitzgerald.

As for Hiren Patel's and Fitzgerald's knowledge, which need not be pled with particularity but still requires supporting subsidiary facts, the FACC contains several allegations that permit a reasonable inference that they knew Daddono's appraisals were false. First, and most directly, the complaint alleges that in 2003, Hiren Patel and Fitzgerald conceived of the scheme along with Philip S. Wolin (of cross-defendant Wolin & Rosen) and Daddono, and further alleges that Hiren Patel directed Fitzgerald to run the scheme for NRB. *Id.* ¶ 165. Although that allegation is general, it is supported by other facts: the complaint also alleges that the 3380 Hoyt property was sold, re-possessed, and sold again to other purchasers multiple times. And the Court can reasonably infer an obvious motive for Hiren Patel and Fitzgerald—NRB's senior executives—to engage in the scheme: it enabled NRB to continuously capture large down payments and excessive debt service payments and regain possession of the hotels once the purchasers' repayment burdens became too much to bear. For each hotel it "sold," NRB could, in essence, accept a large sum of money from the purchasers and still ultimately retain ownership of the property. At the pleadings stage, motive is probative of knowledge. *Bishop*, 900 F.3d at 397. Taken together, the facts in the FACC permit the inference that Hiren Patel and Fitzgerald knew Daddono's appraisals were false. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 658-59 (7th Cir. 2015) (holding that defendant's fraudulent intent was adequately alleged where defendant had an incentive to induce plaintiff to enter into an agreement).

Hiren Patel and Fitzgerald also argue that the scheme is implausible because it would not have been in NRB's interest to make inflated loans that probably could not be paid back. But at the pleadings stage, the court is required to "accept as true all factual allegations in the [FACC] and draw all permissible inferences in [cross-plaintiffs'] favor." *Id*. at 639. Cross-plaintiffs ask the Court to conclude that the facts alleged in the FACC are untrue because they are farfetched. The

Court is not empowered to take that course of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (**"a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely").**

In any event, cross-plaintiffs' theory is not inherently implausible. Cross-plaintiffs say that NRB "stood to lose the most . . . by loaning more money to the Borrowers than the hotel collateral supposedly supported." Hiren Patel MTD at 5. But what NRB gave with one hand it took back with the other; it was both the seller of the hotel properties and the lender of the funds used to purchase the properties. The money it loaned to the purchasers came right back to NRB in the form of the payment for the property; it was a sale of the property on an installment plan, with the down payment and interest payments derived from inflated property valuations. NRB could capture the purchasers' down payments and debt service payments and then repossess the hotel properties without any risk of loss.

Hiren Patel and Fitzgerald—as well as the other cross-defendants—are on firmer ground in arguing that Count II should be dismissed. The claim set forth in Count II alleges that certain cross-defendants defrauded cross-plaintiffs in the closing documents and settlement statements used during the real estate transactions in question. The only way the FACC says these documents were fraudulent, however, is that the principal amounts for the sale price of the properties and the loans made to cross-plaintiffs were based on Daddono's false appraisals. There is no dispute that the amount the hotels were actually sold for—and the amount the cross-plaintiffs agreed to repay, with interest—was the amount listed in the closing documents and settlement statements. In fact, that is the crux of cross-plaintiffs' claim: they overpaid for the hotels in reliance on Daddono's appraisals. There was, therefore, nothing false about closing documents or settlement statements, which represented the true amounts paid. Cross-plaintiffs simply agreed to pay the amounts therein

because they were purportedly defrauded by Daddono's appraisals. Count II is dismissed as to all cross-defendants for want of a false statement.

## 2. SmithAmundsen and Wolin & Rosen

The FACC also names SmithAmundsen and Wolin & Rosen and as parties to the fraud counts, but there are no allegations that either law firm sent the false appraisals to cross-plaintiffs. The failure to allege a false statement of material fact by these cross-defendants precludes liability for the firms as principals to the fraud. The FACC also alleges, however, that the firms aided and abetted Hiren Patel and Fitzgerald's fraud. Under Illinois law, a party aids and abets tortious conduct where: (1) the party whom the defendant aided performed a wrongful act that caused the plaintiff an injury; (2) the defendant was regularly aware of its role as part of the overall tortious activity at the time that it assisted the other party; and (3) the defendant knowingly and substantially assisted the principal violation. *Hill v. Simmons*, 2017 IL App (1st) 160577-U, ¶ 42 (Ill. App. Ct. 20147).

At a minimum, the FACC fails to adequately allege that SmithAmundsen provided substantial assistance. The FACC alleges only one act connecting SmithAmundsen's conduct to cross-plaintiffs,[11] namely that during this litigation SmithAmundsen fraudulently certified that it provided cross-plaintiffs with requested discovery when, in reality, it withheld information responsive to cross-plaintiffs' document requests. FACC ¶¶ 298-300.[12] These allegations sound in

---

[11] The only other fact allegations about SmithAmundsen are that in 2011 it took over from Wolin & Rosen in handling real estate closings for NRB and was retained by Capital Crossing and TPG, which acquired most of NRB's loans after the FDIC took over the bank, in connection with collection litigation. FACC ¶¶ 21-24.

[12] Bafflingly, the FACC alleges that SmithAmundsen defrauded cross-plaintiffs by failing to respond to discovery requests made after this case was removed to federal court. FACC ¶¶ 299-300. But, as the cross-plaintiffs are aware, the Court denied cross-plaintiffs' motions to take discovery before they presented a complaint that survived a motion to dismiss. *See* ECF No. 50; ECF No. 124 at 4 ("there has been no discovery"); ECF No. 182. Neither SmithAmundsen nor any

fraud and must be pled with particularity. But the FACC fails to identify a single document that SmithAmundsen allegedly had access to but failed to disclose or to describe any other way in which SmithAmundsen's discovery certifications were false. Indeed, cross-plaintiffs' brief in opposition to SmithAmundsen's motion to dismiss admits that the complaint is devoid of fact but seeks to excuse that deficiency by complaining that it has not received discovery. Rule 9(b) requires particularity to prevent precisely this situation, in which a plaintiff lacks a factual basis for its claims but nonetheless seeks to engage in a fishing expedition in hopes that discovery will bear fruit. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Cross-plaintiffs cannot plead a claim against SmithAmundsen armed with nothing more than suspicions. Without adequate allegations of knowing and substantial assistance to Hiren Patel and Fitzgerald, cross-plaintiffs' aiding and abetting fraud count against SmithAmundsen must be dismissed.

The aiding and abetting count against Wolin & Rosen is trickier. As previously discussed, the complaint states a fraud claim against Hiren Patel and Fitzgerald, so the first aiding and abetting element—tortious conduct by the principal—is satisfied. And the complaint alleges that Wolin & Rosen (specifically, attorney Julie Kaminski) prepared loan and closing documentation for cross-plaintiffs' hotel transactions. FACC ¶¶ 51-52, 169, 181-82. The complaint identifies the dates on which the closings occurred, the date of a promissory note for the two Muskegon properties, and the date of a loan modification agreement prepared by Kaminski for the Muskegon hotels. *Id*. ¶¶ 141, 181-82. The complaint further identifies the amount Wolin & Rosen was paid for each closing. *Id*. ¶ 141. In short, the complaint adequately describes Wolin & Rosen's participation in the specific real estate transactions involving the cross-plaintiffs.

---

other party has been required to respond to cross-plaintiffs' discovery requests once the case had been removed.

The question, then, is whether the FACC adequately alleges that Wolin & Rosen knew that Daddono's appraisals were falsely inflated such that the second two elements of aiding and abetting—awareness of its role and knowing and substantial assistance—are satisfied. As with Hiren Patel and Fitzgerald, the FACC contains a general allegation that Philip Wolin of Wolin & Rosen was one of the originators of the scheme in 2003. *Id.* ¶ 165. This general allegation is supported by two more specific allegations. The first is that Kaminski and Wolin were in possession of other, non-Daddono appraisals of properties that had also been appraised by Daddono (*see supra* note 7) that made clear Daddono's valuations were fraudulent. *Id.* ¶ 161. The second is that Wolin & Rosen had a motive—namely, receiving excessive compensation—in the form of kickback payments for their work on each transaction. *Id.* ¶ 118, 141. The FACC identifies the dates and amounts of several payments made by NRB to Wolin & Rosen. *Id.* ¶ 141. Together, these allegations might provide sufficient subsidiary facts for the Court to infer, at the pleadings stage, that Wolin & Rosen knew the appraisals were false. *See Bishop*, 2018 WL 3829786, at *5 (motive is relevant to knowledge at the pleadings stage); *Bible*, 799 F.3d at 658-59.

But the Court need not answer that question definitively. Wolin & Rosen argues, and the Court agrees, that all of cross-plaintiffs' state law counts against it are barred by Illinois's statute of repose for claims arising out of legal work. "While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). The last act identified in the FACC that Wolin & Rosen performed related to cross-plaintiffs' transactions occurred on July 18, 2007. The FACC does not identify any undated acts performed by Wolin & Rosen related to cross-plaintiffs' claims. Illinois law bars "actions for

damages based on tort, contract or otherwise against an attorney arising out of an act or omission in the performance of professional services" filed "more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3. The Supreme Court of Illinois has applied the statute of repose even where the plaintiff and defendant never had an attorney/client relationship. *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 23, 5 N.E.3d 158, 166 (Ill. 2014) ("The 'arising out of' language indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services."). Cross-plaintiffs' first complaint against Wolin & Rosen was filed on November 17, 2015, over eight years after Wolin & Rosen's last act. So, it seems cross-plaintiffs have pleaded themselves out of court, at least as to Wolin & Rosen.

Cross-plaintiffs argue that the Court should decline to apply *Evanston Insurance*, asserting that "the majority holding in *Evanston Ins. Co. v. Riseborough* . . . conflicts with rulings of the District Court. Federal courts have not resolved the conflict presented by the majority ruling in *Evanston Ins. Co. v. Riseborough*." Objection to SmithAmundsen LLC's Motion to Dismiss, ECF No. 229, at 13. This argument is frivolous in at least two ways. First, state courts, not federal courts, define state law; the role of a federal court is to apply it as defined by the state's highest court or to predict how that court would likely rule as to questions it has not yet addressed. "A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past."). And in any event, no decision of a federal district court is binding on any other court, period. *See*, *e.g.*, *Wirtz v. City of S. Bend*, 669 F.3d 860, 863 (7th Cir. 2012) ("A district court decision does not have precedential effect … that is, it is not an authority, having force independent of its reasoning, and to which

therefore a court with a similar case must defer even if it disagrees, unless the circumstances that justify overruling a precedent are present."). There is, in short, no "conflict" to resolve; the Illinois Supreme Court has spoken definitively as to the meaning of the state's statute of repose for claims "arising out of an act or mission in the performance of professional services"; this Court's task is to apply that holding faithfully. Doing so means that the claims against Wolin & Rosen are time-barred based on the statute of repose.

Cross-plaintiffs also contend that cross-defendants fraudulently concealed their causes of action from them and that they were not reasonably able to file suit until late 2014. It appears that this argument is available to them despite the six-year statute of repose,[13] but it does not save their claim. Where "the facts pleaded in the complaint establish that a claim is time barred, as they do here, a bare allegation of fraudulent concealment, without more, will not save the claim." *Logan*, 644 F.3d at 582. *See also, e.g., Lakin v. Skaletsky,* 327 Fed. App'x 636, 637-38 (7th Cir. 2009) (affirming dismissal of complaint as time-barred where plaintiff failed to allege plausible basis for equitable tolling). The Illinois fraudulent concealment statute provides: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215. "The concealment contemplated by section 13–215 must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim. Mere silence on the part of the defendant is

---

[13] Notwithstanding its observation in *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006) that "a statute of repose . . . creates an absolute bar on the right to bring a claim,", the Illinois Supreme Court went on to hold in that case that fraudulent concealment tolls the operation of the statute of repose in 735 ILCS 5/13-214.3. *Id.* at 72. This holding was not addressed in *Riseborough*.

insufficient." *Orlak v. Loyola Univ. Health Sys.*, 228 Ill. 2d 1, 18, 885 N.E.2d 999, 1009 (2007).

Although the FACC includes conclusory allegations that cross-defendants fraudulently concealed

cross-plaintiffs' causes of action, it does not identify a single affirmative act taken by any cross-

defendant in furtherance of that purpose.[14] Instead, cross-plaintiffs assert that "[t]he use of false

closing documents to effectuate a Ponzi scheme is fraudulent concealment." But that is not correct.

The acts constituting fraudulent concealment are distinct from the acts that make the underlying

conduct fraudulent. *Gredell v. Wyeth Labs., Inc.*, 346 Ill. App. 3d 51, 60, 803 N.E.2d 541, 548–49

(1st Dist. 2004).

At bottom, the cross-plaintiffs simply allege that the cross-defendants fraudulently

concealed the scheme because they failed to disclose the scheme. Unless cross-plaintiffs identify

a duty giving Wolin & Rosen a legal obligation to affirmatively inform cross-plaintiffs, then, cross-

plaintiffs' claim is barred. The cross-plaintiffs make two ineffectual attempts to do so. They argue

that a fiduciary has an affirmative duty to disclose a fraud. True enough, but as discussed further

*infra*, Wolin & Rosen were not fiduciaries of the cross-plaintiffs, so this argument gets them

nowhere.[15] Cross-plaintiffs also maintain that Wolin & Rosen was obligated by the Illinois Code

of Professional Responsibility to disclose the fraud to cross-plaintiffs. But the rules outlined in

the Code are merely "a safe guide for professional conduct" and violations of the rules do not

"create any presumption . . . that a legal duty has been breached." *Vandenberg v. Brunswick Corp.*,

2017 IL App (1st) 170181, ¶ 33, 90 N.E.3d 1048, 1056. "As such, the rules of professional conduct

---

[14] Except, perhaps, SmithAmundsen's alleged failure to provide discovery, which the Court has already rejected as inadequately pled.

[15] *Cohen v. American Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013), on which cross-plaintiffs rely for the proposition that Wolin & Rosen owed them a fiduciary duty regarding the escrow, says nothing of the sort. Indeed, the opinion notes that "[t]here are no allegations of any kind of special relationship between the parties" and the court found that the complaint alleged "no facts or circumstances to support a finding of a duty to disclose." *Id.* at 614.

cannot give rise to [an attorney's] duty to speak, the violation of which serve[s] as the basis" of cross-plaintiffs' fraudulent concealment argument. *Id*. Cross-plaintiffs' state law counts against Wolin & Rosen are therefore barred by the statute of repose.

### 3.    Other Counts

In Count VII, cross-plaintiffs also assert that the cross-defendants violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). The elements of a claim under the ICFA are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501, 675 N.E.2d 584, 593 (Ill. 1996). The gravamen of cross-plaintiffs' count under the ICFA is the same premise underlying their fraud count: that the false appraisals induced them to purchase the hotels at inflated prices with loans from NRB. The Rule 9(b) standard therefore applies with equal force to cross-plaintiffs' ICFA claim. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (applying Rule 9(b) to an ICFA claim based on allegations of fraud; "the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."). As the Court just noted, cross-plaintiffs have not satisfied Rule 9(b)'s demand for particularity regarding SmithAmundsen and their state law counts against Wolin & Rosen are barred by the statute of repose. As for Hiren Patel and Fitzgerald, on the other hand, the only argument they make addressing the ICFA count is that the FACC does not comply with Rule 9(b). For the same reasons the Court rejected this argument as to the fraud count, it also rejects it as to the ICFA count. Cross-plaintiffs' ICFA count is therefore dismissed as to SmithAmundsen and Wolin & Rosen, but not as to Hiren Patel and Fitzgerald.

The FACC further alleges that cross-defendants entered into a civil conspiracy whose object was to use Daddono's appraisals to defraud cross-plaintiffs. The elements of a civil conspiracy are: (1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 941, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007). Again, this count is time-barred as to Wolin & Rosen. As for SmithAmundsen, the complaint contains no factual allegations that SmithAmundsen ever agreed with Hiren Patel and Fitzgerald to defraud cross-plaintiffs. Aside from conclusory assertions that SmithAmundsen agreed to participate in NRB's scheme, wholly devoid of any supporting detail, the only allegations in the complaint connecting SmithAmundsen to NRB's fraud is its legal work in this litigation. And in that regard, the FACC alleges only that SmithAmundsen performed routine legal work for NRB and its principals. The civil conspiracy claim is accordingly dismissed as to SmithAmundsen.

Hiren Patel and Fitzgerald are, again, another story. As the Court previously explained, the FACC successfully alleges that Hiren Patel and Fitzgerald, with knowledge that Daddono's appraisals were false, used the appraisals to defraud cross-plaintiffs, and that Fitzgerald acted at Hiren Patel's direction. The same allegations that support cross-plaintiffs' fraud count against Hiren Patel and Fitzgerald also support a civil conspiracy count against them.

### B.      Breach of Fiduciary Duty

In dismissing the breach of fiduciary duty counts in the SACC, the Court noted that the typical relationship between lenders and borrowers does not give rise to a fiduciary duty. SACC Opinion 21, ECF No. 183; *see also Singletary v. Continental Ill. Nat. Bank and Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993) (under Illinois law, "a lender is not his borrower's

fiduciary."). Now, as then, cross-plaintiffs maintain that cross-defendants owed them a fiduciary duty as their escrow agents. Under Illinois law, an escrowee "owes a fiduciary duty to act only in accordance with the terms of the escrow instructions." *Freedom Mortgage Corp. v. Burnham Mortgage Corp.*, 720 F. Supp. 2d 978, 997-98 (N.D. Ill. 2010). "Any duty owed to [cross-plaintiffs] in [his] capacity as closing agent[] must derive from the closing instructions, and not generally from law and industry standards." *Id.* at 991 (quoting *Bescor, Inc v. Chicago Title & Trust Co.*, 113 Ill. App. 3d 65, 69, 446 N.E.2d 1209, 1213 (Ill. App. Ct. 1983)). The Court previously dismissed cross-plaintiffs' breach of fiduciary duty counts because the SACC did not identify any closing instructions related to escrow deposits or holdings that had been violated.

The FACC repeats, rather than remedies, this flaw. Although it notes that Fitzgerald was the closing officer for each of the transactions and that Wolin & Rosen prepared the closing instructions, the FACC fails to identify a single closing instruction that Fitzgerald or Wolin & Rosen did not follow. Instead, cross-plaintiffs fault Fitzgerald and Wolin & Rosen only because the closing instructions reflected loan amounts based on fraudulent appraisals. Independent of any specific closing instructions, a closing agent does not have a duty to "provide information regarding the value of collateral." *Guaranty Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 866 (N.D. Ill. 2004). Because the FACC does not identify any closing instructions that any cross-defendant failed to abide by, cross-plaintiffs' breach of fiduciary duty (and aiding and abetting breach of fiduciary duty) counts are dismissed.

### C. Tortious Interference with Contract

The FACC identifies two contracts with which cross-defendants Hiren Patel, Fitzgerald, Wolin & Rosen, and SmithAmundsen purportedly interfered: the agreement between cross-plaintiffs and investors in their hotels, including Nabil Saleh, the original plaintiff in this suit, and

the agreement cross-plaintiffs had to purchase property in Punta Cana, Dominican Republic. According to the FACC, cross-defendants caused a breach of the former agreement when they induced Saleh to sue cross-plaintiffs. Cross-defendants allegedly caused a breach of the Punta Cana agreement when they deprived cross-plaintiff of the resources necessary to execute it.

Under Illinois law, to state a claim for tortious interference with contract, cross-plaintiffs must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *Healy v. Metropolitan Pier and Exposition Authority*, 804 F.3d 836, 841-42 (7th Cir. 2015). The FACC's allegations concerning the Punta Cana contract fall short in several ways. Aside from a bare assertion that Hiren Patel and Fitzgerald knew that the cross-plaintiffs invested in property in Punta Cana, the FACC does not allege a single fact suggesting that any cross-defendant knew of any specific contract with a third party concerning land in Punta Cana. Even if it did, the FACC fails to allege that the third party breached the contract—it simply notes that the Punta Cana contract was "breached due to the actions of the cross-defendants." FACC ¶ 94; *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) ("An action for tortious interference with contract requires the plaintiff to prove that the defendant induced a third party to breach a contract."). The FACC does not identify who breached the contract or what contractual provisions were breached. Nor does the FACC allege any interaction between cross-defendants and the counterparties to the Punta Cana contract. Cross-plaintiffs simply seek to recover for tortious interference because they were unable to take advantage of the Punta Cana opportunity due to cross-defendants' conduct. While cross-plaintiffs'

consequential damages may be relevant should they ultimately succeed on a substantive claim, the allegations in the FACC do not support a finding of liability on a tortious interference theory.

As for the Muskegon contract with Saleh, the complaint fails to allege any facts suggesting that the cross-defendants intentionally induced Saleh to breach. The FACC posits that Saleh violated two provisions of the Muskegon contract prohibiting him from unilaterally suing cross-plaintiffs. Even if Saleh's suit was a breach, however, the FACC does not allege a single interaction between any cross-defendant and Saleh. Nor does the FACC allege any facts indicating that any cross-defendant intended for Saleh to sue cross-plaintiffs (and why would they have wanted to invite these cross-claims by doing so?). Although cross-defendants' actions may have been a but-for cause of Saleh's suit, the absence of allegations suggesting Saleh's breach was an intended outcome of cross-defendants' conduct dooms cross-plaintiffs' tortious interference count. *See Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1156 (N.D. Ill. 2016) ("The plaintiff must show, however, that the defendant intended that result; the intentional inducement element is not met if the defendant merely knew that its conduct was certain or substantially certain to result in the third party breaching the contract.").

### D. Unjust Enrichment

#### 1. Hiren Patel, Fitzgerald, Wolin & Rosen, and SmithAmundsen

Cross-plaintiffs also allege that Hiren Patel, Fitzgerald, Wolin & Rosen, and SmithAmundsen were unjustly enriched. Under Illinois law, "to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). In *Cleary*, the Seventh Circuit addressed whether unjust enrichment

is an independent tort under Illinois law. After surveying Illinois unjust enrichment cases, the court of appeals concluded that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517; *see also State Mechanical Servs., LLC v. NES Equip. Servs. Corp.*, No. 17-cv-5950, 2018 WL 2193248, at *6 (N.D. Ill. May 14, 2018) (compiling cases applying *Cleary*). The FACC alleges several state law counts against cross-defendants: fraud, tortious interference with contract, ICFA, and breach of fiduciary duty. So, because each other count against SmithAmundsen must be dismissed, so too must the unjust enrichment count. And like cross-plaintiffs' other state law counts against Wolin & Rosen, the unjust enrichment count against the firm is barred by the statute of repose. But cross-plaintiffs—having successfully pled fraud and ICFA counts against Hiren Patel and Fitzgerald—may proceed on their unjust enrichment count against those cross-defendants.

### 2.    FDIC

Cross-plaintiffs also plead unjust enrichment against the FDIC. In its previous opinion, the Court dismissed an "equitable subordination" count against the FDIC for failure to exhaust administrative remedies because that theory was distinct from the unjust enrichment theory that the cross-plaintiffs had presented to the FDIC. Now the cross-plaintiffs assert an unjust enrichment claim in the FACC, but it fares no better because, despite the label, it too is entirely distinct from the unjust enrichment claim presented to the FDIC in the administrative proceeding.

As the Court previously explained, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) has an exhaustion requirement. "[T]he FDIC has statutory authority to administer claims against a depository institution for which the FDIC is receiver." *Farnik v. F.D.I.C.*, 707 F.3d 717, 720-21 (7th Cir. 2013). Except as otherwise provided in

FIRREA, "no court shall have jurisdiction over . . . any action seeking a determination of rights with respect to[] the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquit itself as such receiver; or . . . any claim relating to any act or omission of such institution or the [FDIC] as receiver. 12 U.S.C. § 1821(d)(13)(D). FIRREA permits "judicial review of claims that have exhausted [the FDIC's] administrative claim procedure." *Farnik*, 707 F.3d at 721 (citing 12 U.S.C. § 1821(d)(6)(A)). "The party asserting federal jurisdiction bears the burden of demonstrating its existence." *Id.*

Cross-plaintiffs contend that there is no exhaustion requirement where the suit predates the FDIC's receivership. But the Court already rejected this argument, noting that the great weight of authority indicates that pre-receivership claims must be exhausted before the court can continue to exercise jurisdiction over them. *See* SACC Opinion, ECF No. 183 at 27 (collecting cases). Unless cross-plaintiffs exhausted their unjust enrichment theory through the FDIC's administrative process, their unjust enrichment count against the FDIC must be dismissed.

Under FIRREA, the "FDIC is entitled to fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution." *Ravenswood, LLC v. F.D.I.C.*, No. 10–cv–1064, 2011 WL 1079495, at *4 (N.D. Ill. Mar. 21, 2011); *see also Farnik*, 703 F.3d at 721 ("Courts lack jurisdiction to hear such claims unless plaintiffs first present them to the FDIC."). The purpose of the exhaustion requirement is to afford the FDIC "a fair opportunity to determine whether it is in fact obligated to pay [plaintiffs] before being hauled into court." *Ravenswood*, 2011 WL 1079495, at *4 (citing *Brown Leasing Co. v. F.D.I.C.*, 833 F. Supp. 672, 675 (N.D. Ill. 1993)). Cross-plaintiffs reprise yet another losing argument from the last round of motions to dismiss, asserting that a count is not barred so long as the facts underlying it were presented to the FDIC. Not so.

Both the facts and the legal theory entitling plaintiffs to relief must have been identified in the administrative proceeding. See SACC Opinion at 25-26, ECF No. 183.

The FACC alleges that in April 2007, Hasan Merchant tendered a check to Hiren Patel for $100,000 as an "equity injection" for the Hoyt Street hotels. FACC ¶ 126. Cross-plaintiffs maintain that Hiren Patel and Fitzgerald kept these funds as personal compensation, *id*. ¶ 127, yet also alleges that the funds Hiren Patel and Fitzgerald obtained in this manner constitute funds "retain[ed]" by the FDIC "from assets of the failed bank", *id.* ¶ 129. The problem with this theory, apart from its seeming internal inconsistency, is that it bears little resemblance to the unjust enrichment theory cross-plaintiffs submitted to the FDIC. As an initial matter, the unjust enrichment charge brought before the FDIC addressed only funds retained by NRB, whereas the FACC's allegations concern, at least in the first instance, funds "kept as personal compensation by officers Hiren Patel and Edward Fitzgerald." *Compare* FDIC R. at 50, Dkt. 143-1,[16] *with* FACC ¶ 127.

More fundamentally, the cross-plaintiffs' FDIC charges alleged that NRB was unjustly enriched not because property appraisals were false, but due to a scheme in which NRB "made false promises of reimbursement and renovation loans to customers to convince them to take over non-performing hotel and motel properties." *Id*. at 37. Put differently, the FDIC never had an opportunity to evaluate the legal theory that Hiren Patel and Fitzgerald unjustly retained funds due to fraudulent appraisals. It's true that Hasan Merchant submitted an affidavit to the FDIC attesting to the false appraisals. *Id*. at 23. But cross-plaintiffs never connected the false appraisals to the unjust enrichment theory they now seek to pursue in federal court. They were required to do so.

---

[16] Page numbers cited are to the page number of the ECF attachment and do not correspond to the page numbers of the documents included in the entire ECF attachment. This, in other words, is a citation to ECF No. 143-1, page 50 of 321.

Indeed, "[t]o require anything less would impose a burden on the FDIC to research the entire corpus of both federal and state law for any legal theory supported by each set of facts presented." *Brown Leasing Co v. F.D.I.C.*, 833 F. Supp. 672, 675-76 (N.D. Ill. 1993); *see also FirsTier Bank, Kimball, Neb. v. F.D.I.C.*, 935 F.Supp.2d 1109, 1119 (D. Colo. 2013) ("[T]he FDIC was not obligated to dig through the exhibits in order to surmise what claims [plaintiff] might possibly bring."). "Such an enterprise would impose indefensible costs on the FDIC and frustrate FIRREA's intended purpose of expeditiously and fairly resolving the majority of claims against failed institutions without protracted litigation." *Brown Leasing*, 833 F. Supp. at 676. The unjust enrichment count against the FDIC is therefore dismissed.

### E.    RICO

The FACC pleads three RICO counts against all cross-defendants except the FDIC. "[A]ny person employed by or associated with any enterprise" is liable under RICO if he "conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO also imposes liability for investing income derived from a pattern of racketeering activity in an enterprise. 18 U.S.C. § 1962(a). Section 1962(d) also imposes liability for conspiring to do these things. Because they are common to each of these theories, the Court turns first to the enterprise and pattern of racketeering elements.

### 1.    Enterprise

To state a RICO claim, a plaintiff must (among other things) identify an "enterprise." *United Food and Comm. Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity," and is broadly defined. *Id*. (citing *Boyle v. United States*, 553 U.S. 938, 944 (2009)). The FACC identifies two separate enterprises: NRB, until it was taken over by the FDIC, and Capital Crossing Servicing Company once NRB was defunct. The Court will examine each.

### a. NRB

Cross-plaintiffs allege that NRB was a RICO enterprise,[17] and no cross-defendant challenges that assertion. Instead, Hiren Patel, Fitzgerald, SmithAmundsen, and Wolin & Rosen posit that they did not "conduct or participate, directly or indirectly, in" the enterprise's affairs.[18] To conduct or participate in an enterprise's affairs, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1102 (N.D. Ill. 2016) ("[A] person conducts or participates in the conduct of the affairs of an enterprise only if that person uses his position in, or association with, the enterprise to perform acts which are involved in some way in the operation or management of the enterprise, directly or indirectly, or if the person causes another to do so."). "An enterprise is operated not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Reves*, 507 U.S. at 185. A mere "hireling" who provides paid services to an enterprise but does not otherwise make decisions or act on behalf of the enterprise does not conduct the enterprise's affairs. *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932-33 (7th Cir. 1999); *see also* SACC Opinion at 14-15, 18-19.

---

[17] This is undoubtedly why cross-plaintiffs have not asserted their RICO theories against the FDIC, as the successor to NRB. To establish liability under RICO, "one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) and 'enterprise' that is not simply the 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd., v. King*, 533 U.S. 158, 161 (2001).

[18] The FACC does not allege that State Bank of Texas or Chandrakant Patel participated in the NRB enterprise.

With little explanation, Hiren Patel and Fitzgerald argue that they did not conduct NRB's affairs. But the FACC alleges that they were CEO and President of NRB, respectively, and that Hiren Patel orchestrated the entire scheme. In support of that conclusion, the FACC identifies several steps Hiren Patel and Fitzgerald took on NRB's behalf. Fitzgerald, at Hiren Patel's direction, provided cross-defendants with false appraisals to induce cross-defendants to purchase hotels from NRB using NRB loans. Fitzgerald then served as the closing officer on cross-defendants' transactions with NRB. As previously explained, the FACC pleads these events with particularity and the conduct alleged easily suffices to plausible allege participation by Hiren Patel and Fitzgerald in the management and operations of NRB. *See Nesbitt v. Ragas*, No. 13 C 8245, 2015 WL 1331291, at *9 (N.D. Ill. Mar. 20, 2015).

SmithAmundsen and Wolin & Rosen are, again, a different story. As the Court has repeatedly noted, the only remotely specific allegations against SmithAmundsen indicate only that they performed run of the mill legal work for NRB. And while the FACC may adequately allege that Wolin & Rosen knew Daddono's appraisals were fraudulent when it prepared loan documentation for NRB, the complaint contains no facts suggesting that Wolin & Rosen was anything more than NRB's hireling. Wolin & Rosen was paid to perform a service for the enterprise; there are no non-conclusory facts in the FACC suggesting Wolin & Rosen ever controlled any aspect of NRB or made decisions on its behalf. The FACC therefore fails to adequately allege that either law firm "conducted or participated" in the enterprise's activities. *See* SACC Opinion at 18-19; *see also Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d at 688 (N.D. Ill. 2012) (holding that an attorney whose "role in the alleged enterprise was to . . . perform[] the

services of a closing attorney on behalf of the seller [of a property]" was a "mere hireling" who did not "direct[], control[], or conduct[] any aspect of the alleged enterprise").[19]

### b.    Capital Crossing

The FACC's allegations concerning Capital Crossing are razor thin. Cross-plaintiffs assert that Capital Crossing became the RICO enterprise when it agreed to purchase NRB's inflated loans. FACC ¶¶ 22, 135. The complaint also identifies a series of collection cases in which Capital Crossing purportedly submitted false affidavits. But the FACC fails to describe the substance of any of the affidavits or provide any indication of what made them false. Nor does the FACC identify what individuals made the purportedly false statements on Capital Crossing's behalf. But the biggest problem with cross-plaintiffs' allegations regarding Capital Crossing is that neither Capital Crossing nor any of its employees are parties to this lawsuit—and the FACC fails to connect any cross-defendants to Capital Crossing. At best, the alleged ties are as conclusory as they come: Wolin & Rosen and SmithAmundsen are alleged to have engaged in "electronic transmission of fraudulent loan documents" to Capital Crossing, and State Bank of Texas and Chandrakant Patel were purportedly "partners" of Capital Crossing "in purchasing the NRB loan accounts from the FDIC." *Id*. ¶¶ 296, 303. Neither of these allegations remotely suffices to allege that a cross-defendant "participate[d] in the operation or management of" Capital Crossing. *Reves*, 507 U.S. at 185.

---

[19] Cross-plaintiffs' RICO counts against Wolin & Rosen are not barred by the statute of repose, as civil RICO's statute of limitations is governed by federal, and not state, law. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 149-150 (1987). On reply, SmithAmundsen argues for the first time that cross-plaintiffs' RICO counts are barred by the four-year statute of limitations. Even assuming Wolin & Rosen adopted this argument, arguments raised for the first time on reply are forfeited with respect to this motion. *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 980 n. 10 (N.D. Ill. 2014). The failure to assert a statute of limitations defense in a 12(b)(6) motion would not, of course, preclude the law firms from asserting this defense in a summary judgment. Given their dismissals, however, the issue is moot.

The FACC therefore adequately alleges that Hiren Patel and Fitzgerald conducted an enterprise's affairs. It fails, however, to successfully plead 18 U.S.C. § 1962(c) liability as to the remaining cross-defendants.

### 2. Pattern of Racketeering Activity or Collection of Unlawful Debt

In addition to alleging that a defendant participated in the operation of an enterprise, to state a RICO claim the cross-plaintiffs also must plausibly allege that the operators engaged in "a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Cross-plaintiffs allege that both occurred here.

### a. Pattern of Racketeering Activity

"A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 728 (7th Cir. 1998). The predicate acts are violations of enumerated criminal laws, including mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. *Id.* Because RICO was designed to combat ongoing, large-scale criminal conduct rather than discrete acts of malfeasance, the Supreme Court has also read a continuity element into the "pattern of racketeering activity" requirement. "Continuity is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Vicom, Inc. v. Harbridge Merchant Servs.*, Inc., 20 F.3d 771, 779 (7th Cir. 1994).

In this case, given that NRB is defunct and that the FACC alleges that NRB ceased to be the relevant enterprise in 2014, if the complaint successfully alleges continuity, it will be "closed-ended" and not "open-ended" continuity. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" the continuity requirement. *Id.* Courts use several factors to determine if closed-ended continuity is adequately alleged, including "the

number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id*. Great importance is placed on the amount of time over which the predicate acts occurred, and the Seventh Circuit has determined that "a time frame of less than nine months likely does not satisfy the duration requirement." *Id*. at 780; *see also J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (holding that conduct lasting 13 months was not a pattern of racketeering activity).

Cross-defendants contend that none of the fraudulent acts described in the FACC are pled with particularity, so none can serve as predicate acts. But that is plainly not the case: as the Court has explained, the FACC alleges, at the very least, that Hiren Patel and Fitzgerald's mailings of Daddono's false appraisals to cross-plaintiffs are pled with sufficient detail. The question, then, is whether the acts that are properly pled in accordance with Rule 9(b) suffice to allege a pattern of racketeering activity.

As an initial matter, none of the allegations concerning victims other than cross-plaintiffs are pled with particularity. Rule 9(b) requires the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated" to the victim. *Id*. at 777. The FACC contains two sets of allegations against Hiren Patel and Fitzgerald concerning other victims: one addressing the use of fraudulent appraisals, and one concerning perjurious litigation conduct. The latter is easy to resolve: the litigation allegations say only that Patel and Fitzgerald filed false affidavits in several collection cases and wholly fails to identify the substance of the affidavits or indicate what made them false. See FACC ¶¶ 245-47. This is the antithesis of particularity.

The allegations addressing other appraisal fraud victims are a bit more detailed, but close examination reveals significant deficiencies. *See* FACC ¶¶ 188-236. The FACC repeatedly avers that "cross-defendants used a false and inflated appraisal . . . to induce" other specific victims to purchase hotels from NRB using NRB loans. *See, e.g.*, FACC ¶ 189. But never does the FACC identify which of the cross-defendants made these representations,[20] when the appraisals were sent to the victims, or the means through which the appraisals were communicated to the victims.[21] A complaint may not, consistent with Rule 9(b), "lump[] all the defendants together and [] not specify who was involved in what activity." *Vicom*, 20 F.3d at 778; *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Consequently, cross-defendants' alleged conduct toward other victims does not, as pled, constitute racketeering activity.

So, do the allegations concerning Hiren Patel and Fitzgerald's interactions with cross-defendants, on their own, constitute a pattern of racketeering activity? In answering that question, the most important factor is the length of time over which the activity occurred. *Vicom*, 20 F.3d at 779. The FACC specifies four closing dates for the plaintiffs' properties: two for the Benton Harbor property (December 22, 2005 and June 26, 2007) and two for the Muskegon properties (April 18, 2007 and July 18, 2007). FACC ¶ 141. The December 2005 closing is the earliest reference to cross-plaintiffs' involvement with NRB. But the FACC alleges few if any facts about it; there is only a boilerplate allegation that the amount of principal and interest listed in the closing

---

[20] The FACC does allege that Edward Fitzgerald (and Hiren Patel, in one instance) electronically submitted false appraisals to NRB's loan underwriters on specific dates. FACC ¶¶ 213, 220, 224. But the significance of those transmissions cannot be properly pled without adequate allegations that the false appraisals were ever communicated to the purchasers/borrowers.

[21] Several paragraphs do allege other, less relevant dates, like closing dates and the date listed on promissory notes held by NRB. But these dates do not add specificity to the fraud allegations, as the purportedly deceptive acts took place not when the victims closed, but when cross-defendants communicated the false appraisals.

documents was based on a false Daddono appraisal. *Id.* There is no mention of who communicated the appraisal to cross-plaintiffs, when prior to closing the appraisal was communicated, or what the substance of the appraisal was. Indeed, the complaint subsequently alleges (adequately) that Fitzgerald communicated the false appraisal for the Benton Harbor property to cross-plaintiffs on May 1, 2006, several months after the purported December 2005 closing. FACC ¶ 172. And the complaint further alleges that closing on the Benton Harbor property did not occur until June 2006. FACC ¶ 176. May 1, 2006—the date Fitzgerald mailed the false Benton Harbor appraisal—is therefore the earliest properly alleged act of racketeering identified in the FACC. Fitzgerald subsequently mailed false appraisals for the Muskegon properties to cross-plaintiffs in February and March 2007, with closings in April 2007. FACC ¶¶ 179, 186. The April 18, 2007 closing— and its attendant activities, including submission of the false appraisals to NRB's underwriters— are the latest adequately pled fraudulent acts.[22] While the FACC maintains that cross-defendants' conspiracy lasted from 2003 to 2014, the properly pled racketeering acts lasted for only a short time, from May 2006 to April 2007. This eleven-month period is comparable to cases in which the Seventh Circuit determined that the alleged conduct lacked continuity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007 (ten months); *Vicom*, 20 F.3d at 780-81 (nine

---

[22] The FACC does note that Fitzgerald sent a collection letter for the Muskegon properties to two cross-defendants on December 15, 2007. The FACC says only that this letter "stated fraudulent account statements . . . seeking payments of debt service of inflated principal amounts." FACC ¶ 167. But there is no explanation of how the account statements were fraudulent or inaccurate. Indeed, there is no description of the content of the account statements at all aside from a bare assertion of their falsity. Even if there were, the FACC gives no indication that the account statements would be false. As the Court noted in its earlier discussion of settlement statements and closing documents, there is nothing inherently false about the principal amounts listed on documentation ancillary to the loan. There is no dispute that cross-plaintiffs *actually received* the principal amount listed in the letter and in the closing documents and settlement statements. Cross-plaintiffs' complaint is that they only agreed to receive that amount because they were sent false appraisals. There is nothing false about a collection letter that lists a principal amount the recipient actually received.

months); *J.D. Marshall*, 935 F.2d at 821 (thirteen months); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (nine months; compiling cases).

The other relevant factors—the number and variety of predicate acts, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries—also weigh against cross-plaintiffs. For each loan, the FACC identifies with particularity two acts of racketeering by Hiren Patel and Fitzgerald: communication of the false appraisals to the purchasers and NRB's underwriters. *See* FACC ¶¶ 172-173, 178-179, 184, 186. Although cross-plaintiffs assert that these two acts (six in total) amount to a smorgasbord of federal crimes, at their core, the allegations are of mail and wire fraud. *See Jennings*, 495 F.3d at 475 (treating as mail and wire fraud "individual acts [that] violate multiple statutes" where the essence of the acts was mail and wire fraud). And "[m]ail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts . . . may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity." *Vicom*, 20 F.3d at 781 (quoting *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 325 (7th Cir. 1994)). Such is the case here, where multiple communications containing the false appraisals were necessary to complete a single transaction. The relatively small number of predicate acts adequately alleged—and the nature of the acts (including their lack of diversity and the fact that they were part of a single scheme)—therefore suggests that there is no closed-ended continuity. *See Vicom*, 20 F.3d at 781; *Jennings*, 495 F.3d at 475.

Moreover, though cross-plaintiffs attempt to cast NRB as the victim of Hiren Patel and Fitzgerald's conduct, the FACC outlines no identifiable injury to the bank. Indeed, the opposite is the case: cross-plaintiffs' theory is predicated on NRB profiting from the misrepresentations of its

executives. And to the extent cross-plaintiffs contend that the inflated loans caused NRB's eventual demise, the FACC contains no facts connecting the two events. This means that the only victims of properly alleged acts of racketeering are the cross-defendants, Hasan Merchant, and his companies. In short, the time frame of the properly alleged acts, the amount and nature of the acts, and the number of victims all militate against the conclusion that Hiren Patel and Fitzgerald's scheme had closed-ended continuity. Cross-plaintiffs have therefore failed to plausibly allege a pattern of racketeering activity.

### b. Collection of Unlawful Debt

The FACC further alleges that Hiren Patel and Fitzgerald, as operators of the enterprise, collected an unlawful debt in violation of § 1962(c). Cross-plaintiffs' theory is as follows: the principal on each of the loans they took out was about double what it should have been. If one calculated the amount of money they were to pay over the life of the loan, it is as though they took out a loan for the uninflated principal amount at an approximately 1,000% interest rate. According to cross-plaintiffs, this means the loans they took out from NRB violated federal and Illinois usury laws. See 18 U.S.C. §1961(6) (an "unlawful debt" under RICO includes a debt "which is unenforceable . . . in whole or in part as to the principal or interest because of the laws relating to usury"); 12 U.S.C. §§ 85-86 (federal usury statutes); 815 ILCS 205/4 (Illinois usury statute).[23]

Even if the Court accepted cross-plaintiffs' novel interest calculation theory, cross-plaintiffs' loans would not violate the usury laws. The federal usury statute "establishes the maximum allowable interest rate as the rate allowed by the law of the state where the bank is

---

[23] The FACC also posits that the loans violate the Massachusetts usury statute because Capital Crossing is based in Massachusetts. But because the FACC only contains allegations sufficient to conclude that Hiren Patel and Fitzgerald operated NRB, which has no connection to Massachusetts, Massachusetts law has no bearing.

located." *Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1230 (7th Cir. 1998). That would be Illinois, and under Illinois law, "it is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to . . . any loan made to a corporation . . . [or] any loans secured by a mortgage on real estate." 815 ILCS 205/4(1). The FACC alleges that the borrowers in the relevant real estate transactions were cross-defendants M.D. 1 LLC (for the Benton Harbor property) and Muskegan Hotels LLC (for the Muskegon properties). FACC ¶ 141. The Appellate Court of Illinois has applied the corporation exception to the Illinois usury law to limited liability companies. *See McGinley Partners, LLC v. Royal Properties, LLC*, 2018 IL App (1st) 171317, ¶ 64, --- N.E.3d ---- (Ill. App. Ct. 2018). The FACC further alleges that the cross-plaintiffs' loans were secured by mortgages on the hotel properties. *See* FACC ¶¶ 169, 176, 183, 279-283. The loans—which were made to a corporation and secured by mortgages on real property—were therefore not subject to an interest rate ceiling. *See McGinley Partners*, 2018 IL App (1st) 171317 at ¶¶ 61-63. Absent allegations that their loans ran afoul of state or federal usury laws, cross-plaintiffs cannot establish that Hiren Patel or Fitzgerald collected an unlawful debt in violation of § 1962(c).

### 3. § 1962(a) and (d) Liability

Cross-plaintiffs' failure to adequately allege that any cross-defendant engaged in a pattern of racketeering activity collection of any unlawful debt also dooms their contention that the cross-defendants are liable under RICO § 1962(a) (investment of proceeds from a pattern of racketeering activity) and (d) (conspiracy to violate RICO).

Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt" from "us[ing] or invest[ing], directly or indirectly, any part of such income . . . in . . . operation of[] any

enterprise." 18 U.S.C. § 1962(a). Because cross-plaintiffs have failed to plead that Hiren Patel and Fitzgerald engaged in a pattern of racketeering activity or collected an unlawful debt, their § 1962(a) count, like their 1962(c) count, also fails. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1048 (7th Cir. 1998) (holding that a pattern of racketeering activity "is an essential element of a claim under . . .section[] 1962(a)").

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate" any of RICO's substantive provisions. "[I]n order to state a viable claim for conspiracy under § 1962(d), a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Slaney v. The Int'l Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001). The FACC contains no facts addressing what any cross-defendants agreed to do beyond the specific racketeering acts that actually occurred. Because those acts do not amount to a pattern of racketeering activity, cross-plaintiffs fail to allege that any party conspired to violate RICO's substantive provisions.

### F.  Procedural Issues

Cross-defendants raise two arguments for dismissal of the FACC as to some or all of the cross-plaintiffs. The first is that the entire FACC is improperly pled under Federal Rule of Civil Procedure 14(a), which governs third-party practice. Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The rule is generally understood to permit a defendant to add claims against third parties asserting theories of derivative liability like indemnification or contribution. *Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.*, 245 F.R.D. 615,

618 (N.D. Ill. 2007). Under Rule 14(a), "the fact that the third-party claim arose out of the same transaction or set of facts is irrelevant, since impleader cannot be used as a way of combining all controversies having a common relationship." *Id*. (internal quotation marks omitted). Cross-defendants (other than the FDIC) contend that the FACC, at least as to them, is mislabeled as a cross-complaint when it's really a third-party complaint, as none of them were named in Saleh's original suit. And they further posit, correctly, that none of the counts asserted against them are derivative of Saleh's claim against cross-plaintiffs. In other words, each the counts in the FACC could be pursued even if Saleh's lawsuit did not exist. *See Beale v. Revolution Portfolio*, LLC, No. 07 C 6909, 2009 WL 1285527, at *2 (N.D. Ill. May 7, 2009) ("Liability is derivative where it is dependent on the determination of liability in the original action.").

The problem with this argument is that Rule 14(a) is not the only avenue available to cross-plaintiffs for the addition of third-party defendants. Federal Rule of Civil Procedure 13 governs crossclaims, and it permits defendants to "state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action." Fed. R. Civ. P. 13(g). And Rule 13(h) permits the addition of third parties to a crossclaim in accordance with Federal Rule of Civil Procedure 20. Rule 20, in turn, permits parties to be added as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In this case, Saleh's original suit named the cross-plaintiffs and the FDIC, as receiver for NRB, as defendants.[24] Cross-plaintiffs, in turn, asserted a crossclaim

---

[24] Saleh's Second Amended Complaint, which was removed to this Court, named National Republic Bank as a defendant. Prior to removal, the FDIC, as receiver for NRB, substituted itself for NRB as defendant. *See* ECF No. 1-3.

against the FDIC, joining the remaining cross-defendants. No cross-defendant argues that the counts asserted against them do not arise from the same transaction or occurrence or share questions of fact or law with cross-plaintiffs' claim against the FDIC. Each cross-defendant was, therefore, properly joined under Rules 13(h) and 20(a)(2). *See Callanetics Mgmt. Co. v. Pinckney*, No. 13–cv–4359, 2013 WL 6507867, at *3 (N.D. Ill. Dec. 11, 2013).

Cross-defendants also argue that three cross-plaintiffs—Michael Merchant (as administrator of Hasan Merchant's estate), MD Global LLC, and Global Development, Inc.—lack prudential standing. According to cross-defendants, the FACC alleges that only two cross-plaintiffs, M.D. 1 LLC and Muskegan Hotels LLC, were the actual borrowers for the Benton Harbor and Muskegon properties; the other cross-plaintiffs were only investors in and/or members of those LLCs. *See* FACC ¶ 141 (identifying M.D. 1 and Muskegan Hotels LLC as the borrowers). Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." One consequence of this "nonconstitutional, prudential limitation on standing" is that "a shareholder generally cannot sue for indirect harm he suffers as a result of an injury to a corporation." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). Courts generally apply this rule to members and shareholders in an LLC and limited partners in a limited partnership. *See Putzier v. Ace Hardware Corp.*, No. 13 C 2849, 2016 WL 1337295, at *4-5 (N.D. Ill. Mar. 30, 2016); *L&F Homes and Dev., LLC v. City of Gulfport*, 538 F. App'x 395, 408 (5th Cir. 2013); *CLIP Assocs., LP v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 122-23 (2d Cir. 2013). An exception to the rule "allows a shareholder to pursue an action originating from an injury to the corporation if he has suffered a direct, personal injury independent of the derivative injury common to all shareholders." *Rawoof*, 521 F.3d at 757.

Cross-plaintiffs do not challenge the assertion that only M.D. 1 and Muskegan Hotels LLC were borrowers. Instead, they posit that Michael Merchant, as administrator for Hasan Merchant, has prudential standing under the direct, independent personal injury exception. But virtually all the factual allegations cross-plaintiffs point to allege a variety of maladies as to all cross-plaintiffs, without breaking down which cross-plaintiffs suffered which injuries. *See* FACC ¶¶ 79, 273, 305. This is the paradigmatic situation in which a shareholder's injury is indistinguishable from that of other shareholders. *See Putzier*, 2016 WL 1337295, at *6 (rejecting shareholder standing where "[p]laintiffs ma[de] no attempt to differentiate between the claims asserted by the corporate entities and the owners of these corporate entities"); *compare Korte v. Sebelius*, 735 F.3d 654, 668-69 (invoking exception to the shareholder-standing rule where the owners of a "closely held corporation" had "a direct and personal interest in vindicating their individual religious-liberty rights").[25] M.D. 1 and Muskegan Hotels LLC, therefore, are the only cross-plaintiffs with prudential standing to pursue the remaining claims.

\* \* \*

For the foregoing reasons, cross-defendants' motions to dismiss are granted in part and denied in part. Cross-defendants Wolin & Rosen, SmithAmundsen, FDIC, State Bank of Texas, and Chandrakant Patel are dismissed from this action. The FACC is dismissed in its entirety as to cross-plaintiffs Michael I. Merchant, as administrator of the estate of Hasan Merchant, Global Development, Inc., and MD Global LLC. Each count against cross-defendants Hiren Patel and Edward Fitzgerald is dismissed, except for the fraud (count I only), Illinois Consumer Fraud Act,

---

[25] This may not be the case with respect to cross-plaintiffs' tortious interference with contract counts, as they appear to be predicated on the notion that cross-defendants intentionally interfered with contracts to which each cross-plaintiff was a party. The Court need not further parse the issue, though, because the FACC's tortious interference allegations are inadequate and cross-plaintiffs will not be given yet another opportunity to replead.

unjust enrichment, and civil conspiracy counts. Because cross-plaintiffs have had myriad opportunities to replead—the last three of which were with the benefit of a ruling on the last round of motions to dismiss—each of the dismissals is with prejudice.

Dated: March 25, 2019

_____
John J. Tharp, Jr.
United States District Judge