**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NABIL SALEH, as Trustee of the Nabil Saleh M.D. LTD Pension Plan, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HASAN MERCHANT, et al., )<br>)<br>Defendants. ) | No. 14-CV-09186<br><br>Judge John J. Tharp, Jr. |

---

MUSKEGAN HOTELS LLC, M.D. 1 )
LLC, GLOBAL DEVELOPMENT, )
INC., MD GLOBAL LLC and )
MICHAEL I. MERCHANT, as )
Administrator of the Estate of Hasan G. )
Merchant )
 )
    Cross-Plaintiffs, )
 )
    v. )
 )
FEDERAL DEPOSIT INSURANCE )
CORP., as Receiver for The National )
Republic Bank of Chicago, THE STATE )
BANK OF TEXAS, CHANDRAKANT )
PATEL, ADVANCED APPRAISAL )
GROUP, INC., ADVANCED )
APPRAISAL CONSULTANTS, INC., )
ADVANCED APPRAISAL )
CONSULTANTS, LLC, WILLIAM )
DADDONO, HIREN PATEL, )
EDWARD FITZGERALD, WOLIN & )
ROSEN LTD. and SMITHAMUNDSEN )
LLC, )
 )
    Cross-Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Cross-plaintiffs Muskegan Hotels LLC ("MH") and M.D. 1 LLC seek to recover against several cross-defendants for fraud relating to three hotel purchases in 2007. MH has moved for partial summary judgment on three counts of its fifth amended cross-complaint as the purchaser of two of those hotel properties. Hiren Patel, one of the cross-defendants, has moved for summary judgment on all claims against him with respect to all three properties. No other cross-defendant has joined his motion. For the reasons set forth below, MH's motion for partial summary judgment is denied, and Hiren Patel's motion for summary judgment is granted.

## **BACKGROUND**[1]

MH was an Illinois LLC managed by Hasan Merchant, who is now deceased. On April 18, 2007, MH purchased two hotel properties from the National Republic Bank of Chicago ("NRB"). The properties were located at 3380 Hoyt Street and 3450 Hoyt Street in Muskegon, Michigan.[2] MH, through Merchant, executed purchase contracts with NRB for each, buying 3380 Hoyt for $917,500 and 3450 Hoyt for $1,067,500. *See* 3380 Hoyt Purchase Contract, Ex. 3 to MH's Statement of Material Facts ("MHSMF") (ECF No. 343-1); 3450 Hoyt Purchase Contract, Ex. 4 to MHSMF (ECF No. 343-1). These contracts for sale of each of the properties contained the same terms and conditions, except for the sales price, real estate property sold, and payment terms. *See id.*; MH's Resp. to Hiren Patel's Statement of Material Facts ("HPSMF") (ECF No. 355) ¶ 7.

To finance its purchases, MH took out a mortgage loan from NRB for $1,785,000, which was secured by a lien on both Hoyt properties, and made a down payment, presumably for the

---

[1] The following facts are undisputed unless otherwise noted.

[2] The third hotel property at issue in this case, located in Benton Harbor, Michigan, was purchased by co-cross-plaintiff M.D. 1 LLC, which has not moved for summary judgment on its cross claim.

remaining balance on the order of $200,000. *See* 4/18/2007 Security Agreement, Ex. 6 to MHSMF (ECF No. 343-1); 4/18/2007 Loan Agreement, Ex. 6 to HPSMF (ECF No. 350-7);[3] 4/18/2007 Promissory Note, Ex. 8 to HPSMF (ECF No. 350-9). On June 26, 2007, the parties executed the First Loan Modification and Ratification Agreement, modifying the loan to increase the principal loan amount by $500,000, bringing the total to $2,285,000.[4] *See* Ex. 10 to HPSMF (ECF No. 350-11).

MH's investment fared poorly. The hotels were not able to generate enough income to service the debt, and MH ultimately had to default on its loans. As a result, NRB foreclosed on the properties. As happens with foreclosures, the bank ended up not only in possession of the surrendered properties but also MH's down payments and all loan payments MH had made before defaulting. According to MH, this was in accordance with the cross-defendants' illicit plan.

MH claims that the cross-defendants fraudulently induced it to purchase the properties, and paying more than they were worth, by means of artificially inflated appraisals. After dismissal of various crossclaims and cross-defendants at the pleading stage, the remaining cross-defendants are: Hema Patel, as personal representative of the Estate of Hiren Patel, who was the CEO of NRB[5]; Edward Fitzgerald, who was the president of NRB and second-in-command to Hiren Patel[6];

---

[3] Inexplicably, neither party has filed a complete version of the 4/18/2007 Loan Agreement.

[4] Without explanation, MH disputes that any modification or ratification of the 4/17/2007 loan documents took place, *see* MH Resp. to HPSMF ¶¶ 18-19, while seeming to accept that fact in its brief, *see* MH memorandum.for partial summary judgment (ECF No. 342) at 11. MH does not appear to challenge the authenticity of the 6/26/2007 document.

[5] Any references in this opinion to "Patel," without using a first name, are to Hiren Patel. There is another cross-defendant Patel (Chandrakant Patel) who was previously dismissed from this case and an expert witness for the cross-plaintiffs, Kiran Patel.

[6] Fitzgerald filed a Chapter 13 bankruptcy petition in March 2020. (Case No. 8:20-bk-02187 M.D. Fla). The cross-plaintiffs filed claims, the case was converted to a Chapter 7 case, and the cross-plaintiffs' claims (totaling $29 million) were allowed as general unsecured claims and were entitled to a *pro rata* share of the $4,409.64 of estate assets less allowed administrative and

3

William Daddono, formerly NRB's exclusive outside appraiser for various Midwest states including Michigan; and a few of Daddono's appraisal companies.[7] The surviving counts are fraud, violation of the Illinois Consumer Fraud Act, unjust enrichment, and civil conspiracy. These counts all stem from a single purported scheme.

### The Alleged Appraisal Inflation Scheme

Cross-plaintiffs claim that Patel, Fitzgerald, and Daddono conspired to use artificially inflated appraisals to sell hotel properties owned by NRB to MH and M.D. 1 at prices far above—indeed, almost double—their fair market values. Fifth Am. Cross-Complaint, ¶¶ 12, 26, 27, 28, 38, 70, 74, 76-78.

According to the cross-plaintiffs, Fitzgerald, at Patel's direction, communicated the bank's desired valuations to Daddono over the phone by telling him the bank's planned sale prices in advance of Daddono's appraisals. Next, Daddono prepared false/misleading reports that manipulated various facts and used improper methodologies with the objective of reaching appraisal values in conformity with the bank's desired sale prices. Then, these appraisals were communicated to Hasan Merchant, who purportedly relied on them in directing MH's purchases of the Hoyt Street properties.

Daddono drafted multiple appraisals for each of the two Hoyt Street properties at various points in time. First, in his February 2006 appraisals, Daddono valued the 3380 Hoyt Street property at $1,310,000 and the 3450 Hoyt Street property at $1,100,000. These are the two appraisals that cross-plaintiffs allege MH relied on in purchasing the properties from NRB. Next,

---

priority claims. A discharge order was issued on March 16, 2021. No suggestion of bankruptcy was ever filed in this Court. Cross-defendant Patel asserts that the crossclaims as to Fitzgerald should be dismissed in light of the bankruptcy discharge, but that is not an argument for Patel to make.

[7] Neither Daddono nor his companies have appeared in this litigation.

in March 2007, Daddono valued the 3380 Hoyt Street property at $925,000 and the 3450 Hoyt Street property at $1,190,000. In April 2009, Daddono valued the 3380 Hoyt Street property at $975,000 and the 3450 Hoyt Street property at $630,000.

| Property | Feb. 2006 Appraisal | March 2007 Appraisal | April 2009 Appraisal | April 2007 Purchase Price |
|---|---|---|---|---|
| 3380 Hoyt St. | $1,310,000 | $925,000 | $975,000 | $917,500 |
| 3450 Hoyt St. | $1,100,000 | $1,190,000 | $630,000 | $1,067,500 |

It is important to note that the fraud claim here is premised only on Merchant's reliance on the 2006 appraisals for the Hoyt properties. There is no evidence or contention that Hasan Merchant reviewed or relied on either of the March 2007 appraisals for the two Hoyt Street properties prior to MH's purchases of them. *See, e.g.*, Cross-Plaintiffs' Resp. to HPSMF (ECF No. 355) ¶ 37 (undisputed that cross-plaintiffs' witness Shah testified that Merchant relied on the February 2006 appraisal but not the March 2007 appraisal prior to the April 2007 acquisition of 3380 Hoyt because "it is common practice to rely on appraisals written more than one year earlier."). Also, there is no evidence or contention that Merchant or anyone else reviewed any of the appraisals for the Benton Harbor property on MD's behalf prior to MD's purchase of it. *See* HPSMF ¶ 28 (undisputed that "Merchant did not make any assertion regarding the hotel property located at 798 Ferguson, Benton Harbor, Michigan . . . . Nor did Merchant make any assertion regarding any alleged misrepresentations that M.D. 1, LLC purports to have relied on.").

<u>Relevant Contractual Provisions</u>

Each contract for sale of the Muskegon properties provided that each contract had been jointly drafted and negotiated. HPSMF ¶ 13. Each was duly signed by Merchant on behalf of MH and Fitzgerald on behalf of NRB. Neither contract for sale provided any written representation by

NRB containing any appraisal, appraised value, or valuation of the properties; nor did any of the documents executed at closing on April 18, 2007 (*e.g.*, the loan agreements). HPSMF ¶¶ 16-17.

Section 4 of each contract for sale of real estate provided that the buyer, MH, had an opportunity to inspect the real estate prior to the closing of the sale, but there is no evidence that MH ever did so. MH's Resp. to HPSMF ¶ 9; 3380 Hoyt Purchase Contract, Ex. 3 to MHSMF; 3450 Hoyt Purchase Contract, Ex. 4 to MHSMF.

Section 15(c) of each contract for sale provided that the properties were being sold "as-is":

> AS A MATERIAL PART OF THE CONSIDERATION FOR THIS AGREEMENT, SELLER AND PURCHASER AGREE THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT AND IN THE CLOSING DOCUMENTS, THE PURCHASER IS ACQUIRING THE PROPERTY "AS IS" AND WITH ALL FAULTS AND DEFECTS, LATENT AND PATENT, AND PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES IN THIS AGREEMENT AND THE CLOSING DOCUMENTS, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR UNWRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE NATURE, QUALITY OR CONDITION OF THE PROPERTY . . . ., (B) THE INCOME TO BE DERIVED FROM THE PROPERTY, (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY INTEND TO CONDUCT THEREON, (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENTAL AUTHORITY OR BODY HAVING JURISDICTION . . . (E) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, OR (F) ANY OTHER MATTER RELATING TO OR CONCERNING THE PROPERTY . . . PURCHASER ACKNOWLEDGES THAT PURCHASER, HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, IS RELYING SOLELY ON ITS

> INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY OR ON BEHALF OF SELLER, OR ANY STATEMENT, REPRESENTATION OR OTHER ASSERTION MADE BY SELLER WITH RESPECT TO THE PROPERTY, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT AND IN THE CLOSING DOCUMENTS. PURCHASER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PROPERTY, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, IT BEING INTENDED BY THE PARTIES. THE ACCURACY AND COMPLETENESS OF SUCH INFORMATION ITSELF. BUYER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS SECTION ARE AN INTEGRAL PORTION OF THE AGREEMENT AND THAT SELLER WOULD NOT AGREE TO SELL THE PROPERTY TO PURCHASER FOR THE PURCHASE PRICE WITHOUT THE DISCLAIMERS, AGREEMENTS AND STATEMENTS SET FORTH IN THIS SECTION.

HPSMF ¶ 10; 3380 Hoyt Purchase Contract, Ex. 3 to MHSMF; 3450 Hoyt Purchase Contract, Ex. 4 to MHSMF.

Section 16 of each contract for sale of real estate provided: "**DUE DILIGENCE**: Intentionally Omitted." HPSMF ¶ 11; 3380 Hoyt Purchase Contract, Ex. 3 to MHSMF; 3450 Hoyt Purchase Contract, Ex. 4 to MHSMF. Further, Section 16(c) of each contract goes on to state, "PURCHASER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PROPERTY, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION."

In addition, Section 22(f) of each contract set forth an integration and non-reliance clause, providing:

> This written Contract contains the sole and entire agreement between the parties, and supersedes any and all other agreements between them. The Parties acknowledge and agree that neither of them has made any representation with respect to the subject matter of this Contract or any representations inducing the execution and delivery hereof except such representations as are specifically set forth herein, and each party acknowledges that he, she or it has relied on his, her or its own judgment in entering into this Contract. The parties further acknowledge that any statements or representations that may have heretofore been made by any of them to the other are void and of no effect and that none of them has relied thereon in connection with his, her or its dealings with the other.

HPSMF ¶ 12; 3380 Hoyt Purchase Contract, Ex. 3 to MHSMF; 3450 Hoyt Purchase Contract, Ex. 4 to MHSMF.

Finally, the June 26, 2007 loan also included a "Release of Lender" clause (¶ 7) whereby MH agreed to waive any and all claims, known or unknown, that it "ever had, now have [sic] or hereafter can, may or shall have against" NRB (or its employees, officers, agents, members, attorneys, successors, assigns, and other affiliates) in connection with the loan, loan documents, or the underlying transactions. HPSMF ¶ 20. (MH attempts to dispute this fact, but its dispute is legal—only in regard to the clause's purported legal effect on this action—not factual. *See* MH Resp. to HPSMF ¶ 20.)

## ANALYSIS

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the

8

absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

Cross-plaintiffs have moved for partial summary judgment on liability against Hiren Patel, Edward Fitzgerald, William Daddono, and Daddono's companies on counts I (fraudulent appraisals), III (aiding and abetting fraud), and VII (violation of the Illinois Consumer Fraud and Deceptive Practices Act). But the Court previously dismissed cross-plaintiff's third count, the aiding and abetting fraud claim, as against Patel and Fitzgerald, *see* ECF No. 283 at 14, so it will only consider Daddono and his companies' possible liability for that Count, if necessary.

Patel has also moved for summary judgment on all counts against him (common law fraud, IFCA claim, civil conspiracy to commit fraud, and unjust enrichment). His motion not only attacks the sufficiency of the evidence as to his individual liability for any fraud but also argues that the cross-plaintiffs are unable to prove that they were defrauded at all. As Patel points out, this Court has ruled that "all of cross-plaintiffs' [remaining] claims rise or fall with proof of the elements of their common law fraud claim." HP Memo. (ECF No. 349) at 8; *see Saleh, v. Merchant*, 14-CV-09186, 2019 WL 1331788, at *8-9 (N.D. Ill. Mar. 25, 2019), *aff'd sub nom. Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir. 2021). As such, the cross-plaintiffs' entire case will unravel if they have not adduced sufficient evidence to convince a reasonable factfinder that "the false appraisals induced them to purchase the hotels at inflated prices with loans from NRB." *Saleh*, 2019 WL 133178, at *8. Patel further argues that each of the cross-plaintiffs' claims are barred by the Illinois Credit Agreements Act and the applicable statutes of limitations.

Patel also contends that various pieces of evidence offered by MH are inadmissible, including the 2014 declaration of the now-deceased Hasan Merchant and the testimony of Hans

Detlefsen, Shailesh Shah, and Kiran Patel. He has filed a motion to exclude the expert testimony of Shah and Kiran Patel specifically. ECF No. 351. Since the Court finds that cross-plaintiffs lack sufficient evidentiary support to survive summary judgment even if these witnesses' testimony were admissible, the Court need not reach a determination as to admissibility at this stage.

**I.      Fraud**

"In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (internal quotation marks omitted). Each element must be proved by clear and convincing evidence. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 866 (7th Cir. 2020).[8]

Patel challenges cross-plaintiffs' ability to demonstrate the first four elements. He argues that (1) the appraisals were not false, (2) the appraisals were statements of opinion, not fact, and thus not actionable, (3) even if they were false factual statements, Patel neither directed Daddono to falsify them nor had knowledge that they were false, and (4) cross-plaintiffs did not reasonably rely on the appraisals to their detriment. It is unnecessary to address each of these arguments because the last one, concerning reliance, is fully and plainly dispositive.

**A.      Justifiable Reliance**

Patel argues that the cross-plaintiffs did not justifiably rely on the appraisals as a matter of law. He is correct. Generally, the issue of reliance is a fact-intensive inquiry. But here, the record is so one-sided that it warrants a ruling as a matter of law in favor of Patel.

---

[8] The parties do not dispute that Illinois law governs the cross-plaintiffs' claims.

MH has not adduced clear and convincing evidence that it relied on Daddono's appraisals in deciding to purchase the Hoyt properties, or that any such reliance was reasonable. The *only* affirmative evidence of reliance that MH offers is Hasan Merchant's 2014 declaration, in which he conclusorily states, "I justifiably and reasonably relied on the appraisals, believing them to be true, but which [NRB] knew were false." *See* H. Merchant Decl., Ex. 9 to MHSMF at ¶ 29. There is no indication as to which portions of the appraisals Mr. Merchant read, when he read them, whether he took the appraisals at face value or scrutinized any of the questionable calculations and methodologies they contained, why he believed they were true, whether it would have been reasonable for him or someone in his position to believe they were true, whether he typically relied on appraisals in arriving at real estate investment decisions, whether he referred to Daddono's appraisal figures in negotiating the purchase prices with NRB, why he relied on the February 2006 appraisals rather than the March 2007 versions, why he did not obtain his own appraisal of the properties, or whether he took any steps to independently verify any information conveyed by the appraisals. Perhaps most perplexingly, MH has not offered any explanation as to how Merchant relied on Daddono's 2006 appraisals in deciding to purchase the Hoyt Street properties when the 2006 appraisal value for the 3450 Hoyt property was more than $200,000 lower than that of the 3380 Hoyt property, but the purchase price for the 3450 Hoyt property was nearly $150,000 higher than the price MH paid for the 3380 Hoyt property.

| Property | Feb. 2006 Appraisal | March 2007 Appraisal | April 2009 Appraisal | April 2007 Purchase Price |
|---|---|---|---|---|
| 3380 Hoyt St. | $1,310,000 | $925,000 | $975,000 | $917,500 |
| 3450 Hoyt St. | $1,100,000 | $1,190,000 | $630,000 | $1,067,500 |

Even viewing the record in the light most favorable to MH, for the Court to allow the issue of reliance to go before a jury—substantiated solely by a conclusory statement that the buyer

11

"justifiably and reasonably relied on the" false representations—would effectively eliminate the cross-plaintiffs' burden of adducing sufficient evidence to support a finding in its favor on the reliance element. A plaintiff claiming fraud cannot get to a jury simply by offering such conclusory and generic testimony. *See Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (citation omitted).

It gets worse for the cross-plaintiffs. Patel contends that the cross-plaintiffs are precluded from pursuing their fraud claim because each contract for sale of the Hoyt Street properties at issue contained as-is, integration, and, most importantly, non-reliance clauses.[9] Generally, a non-reliance clause is a provision whereby contracting parties expressly repudiate any reliance on any representations that are not in the contract. Since justifiable reliance is an essential element of any fraud claim, a plaintiff's assent to a non-reliance clause can be fatal to their argument that a prior misrepresentation induced them to enter into the contract containing the non-reliance clause.

The logic is simple: a party who knowingly says, "I'm not relying on anything other than A, B, or C as I'm agreeing to this contract," cannot later say, "I relied on X when I agreed to that contract." The Seventh Circuit and Illinois appellate courts have repeatedly recognized as much. *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 748-51 (7th Cir. 2017) ("sophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for their decision to contract." (quoting *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 991 (7th Cir. 2005))); *Schrager*

---

[9] It is unclear why this argument was not raised during the many earlier rounds of motions to dismiss during the pleading stage.

*v. Bailey*, 973 N.E.2d 932, 935-39 (Ill. App. 1st Dist. 2012) ("[s]ince reliance is an element of fraud, the [nonreliance] clause, if upheld—and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises—precludes a fraud suit." (quoting *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002))).[10]

Here, the contracts unambiguously repudiate any reliance on any prior oral or written representations. Section 16(c) of each contract even states, "PURCHASER FURTHER ACKNOWLEDGES THAT NO INDEPENDENT INVESTIGATION OR VERIFICATION HAS BEEN OR WILL BE MADE BY SELLER WITH RESPECT TO ANY INFORMATION SUPPLIED BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PROPERTY, AND SELLER MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION." MH has not argued that Merchant did not understand any of the relevant clauses, or that there was any fraud in the execution of the contract. In fact, Merchant—who created two companies to purchase three hotels almost simultaneously—was a sophisticated buyer. *See* MH's Statement of Additional Facts (ECF No. 355) ¶ 9 ("By the time Hasan Merchant signed his Declaration in December 2014, he had been a Licensed Real Estate Broker for twenty-two (22) years…"). Moreover, MH presumably received a discount on the total purchase price for assenting to the non-reliance and as-is clauses; the as-is clause even states that it was included "as a material part of the consideration for this agreement." MH cannot take its as-is and non-reliance discounts at the time of purchase and later seek to snatch back that which it exchanged for those discounts.

---

[10] Although previously many Illinois cases focused on the preclusive effect of non-reliance clauses on fraud claims based on prior **oral** misrepresentations, *see, e.g.*, *Rissman v. Rissman*, 213 F.3d 381, 383–85 (7th Cir. 2000), the *ADM Alliance Nutrition* court explained that "[t]he rationale for barring fraud claims [based on a non-reliance clause] is the same for both oral and written statements…" 877 F.3d at 750.

MH's only argument in response is that, since fraud in the inducement vitiates the contract and the non-reliance clause was part of the contract, the clause cannot bar MH's claim if MH can prove it was fraudulently induced. That argument misses the mark. MH's voluntary and informed assent to the non-reliance clause is strong evidence that MH was not fraudulently induced to enter the transactions in the first place.[11] Again, courts applying Illinois law have frequently found that non-reliance clauses preclude fraudulent inducement claims based on prior representations that are not reaffirmed in the contract containing the clause. *See, e.g.*, *Colagrossi v. Royal Bank of Scotland*, 2016 IL App (1st) 142216, ¶¶ 45-47; *Village of Palatine v. Palatine Associates, LLC*, 966 N.E.2d 1174, 1196-97 (Ill. App. 1st Dist. 2012).

Finally, the Merchant declaration only pertains to the Hoyt Street properties in Muskegon, Michigan. *See* HPSMF ¶ 28. The operative Fifth Amended Complaint includes similar allegations of appraisal fraud concerning a third property in Benton Harbor, Michigan. But, as Patel points out, the cross-plaintiffs have adduced no evidence of reliance on the appraisal for that property, have not argued that that property's appraisal was false or misleading, nor have they even attempted to submit statements of fact concerning the same. Accordingly, all claims stemming from appraisal fraud for the Benton Harbor property are dismissed against Patel.

  **B.**  **Patel and Fitzgerald's Involvement in Inflating Appraisals**

Although the cross-plaintiffs' claims have been dispatched based on the reliance element, it is clear that the record lacks sufficient evidence to support the other elements as well. For example, cross-plaintiffs have not adduced any evidence to suggest that Patel (or Fitzgerald) directed Daddono to artificially inflate the appraisals for the Hoyt properties. MH's only evidence

---

[11] MH does not argue that its assent to the non-reliance clause itself was procured by fraud. Nor does it claim that its execution of the contract more generally was procured by fraud (*e.g.*, Merchant was not tricked into signing the contract by being told it was a petition to ban fracking).

that Patel, Fitzgerald, and/or NRB directed Daddono to artificially inflate the appraisals is Shailesh M. Shah's testimony "from personal knowledge of meetings from 2007 through 2011 at the bank about his seven (7) hotels that Patel and Fitzgerald conveyed their desired appraisal valuations to Daddono by telling him, 'this is what we are selling the property at[,]' and naming the purchase price." MH's Resp. (ECF No. 354) at 4. Even assuming Shah's testimony would not be hearsay, it is clear that Shah's testimony about direction provided to Daddono concerned appraisals *other than* the ones that are at issue in this litigation. There is no evidence concerning coordination of Patel/Fitzgerald/NRB with Daddono in 2006, which is when Daddono published his appraisals for the Hoyt Street properties on which Merchant purportedly relied. Therefore, even if the Court were to find that cross-plaintiffs were defrauded based on Daddono's appraisals, there is not sufficient evidence to hold NRB's officers, Hiren Patel and Ed Fitzgerald, personally liable for the fraud based on either on a conspiracy theory (which requires evidence of concerted action or an agreement) or directly. *See Manion v. Stallings Co.*, 204 Ill. App. 3d 179, 191-92 (Ill. App. 3d 1990) ("although corporate officers generally are not liable for the obligations of the corporation, they are personally liable to a victim of a tort for damages resulting from their personal participation in the tort.").

## II.     The Illinois Credit Agreements Act and Statutes of Limitations

Patel has also argued that the Illinois Credit Agreements Act and Illinois' statutes of limitations each bar the cross-plaintiffs' claims. For the reasons stated above, the cross-plaintiffs have failed to adduce sufficient evidence to support any verdict in their favor based on the merits. Accordingly, it is unnecessary for the Court to reach the parties' arguments surrounding these two procedural barriers.

\*   \*   \*

For the foregoing reasons, cross-defendant Hiren Patel's motion for summary judgment is granted on all claims against him, and his motion to exclude expert testimony is denied as moot. Cross-plaintiff Muskegon Hotels LLC's motion for partial summary judgment is denied. Judgment will be entered in favor of cross-defendant Hiren Patel. Pursuant to Fed. R. Civ. P. 56(f), the cross-plaintiffs are ordered to show cause by April 24, 2023 why their claims against the remaining cross-defendants should not be dismissed based on the findings in this order.

Dated: March 30, 2023

John J. Tharp, Jr.
United States District Judge